THE SAVANNAH, FLORIDA AND WESTERN RAILWAY COMPANY *v.* STEININGER & COMPANY.

On the evidence in the record, there was no error in overruling the *certiorari*.

March 10, 1890.

*Certiorari.* Evidence. Verdict. Before Judge BOWER. Decatur superior court. May term, 1889.

This was a suit against the railway company, in a justice's court, for $33.25 for a bale of cotton lost. The testimony of Lytle, one of the plaintiffs, and Townsend, a warehouseman, tended to show the following : On November 11th, 1886, plaintiffs owned a bale of cotton stored at Townsend's warehouse, and instructed Townsend to ship it to New York. They never did or could get the railroad receipt for that bale, as the railway company denied having received it and had never paid for it. Townsend marked this bale and two others and placed them at one end of the platform, being particularly careful about this lot because plaintiffs said they wanted the railroad receipts as soon as possible, and an order to ship to New York was an unusual occurrence. He saw this bale loaded with others on the dray, of which Carter was the driver and Terrell the owner, and when the dray came back from the railroad depot, looked at the stub in receipt-book, and all the cotton on it was checked off and the receipt signed with a pencil by the agent, in the usual way. Never noticed that stub again until the

next week, when a controversy arose about this bale; and then he saw that the name on the receipt had been erased, the check over this bale rubbed off, and the words " No. 13 short" written thereon. He saw Colbert, who checked at the depot, and asked him about it. Colbert told him they had made a mistake some way, and looked for the bale to turn up in Savannah, and would let him know if it did; that he (Colbert) received that bale at the depot from Carter and checked it off himself, and Peacock (the head-clerk at the depot) made him change the receipt afterwards. Plaintiffs had no bale at Dickinson's warehouse of the mark of the bale in question, but Dickinson claimed to have shipped out in this mark one which they ordered out in another mark, and when the returns came in they showed he was correct. Plaintiffs had return sales for a bale marked LEH No. 13, but the weight did not correspond with the weight of the bale in question, and did correspond with the one shipped out by Dickinson in this mark, though he was ordered to ship it in another. The reason Townsend did not ask the railroad agent for bale LEH No. 13 in his note of November 17th was, because he had already received a bill of lading for that bale from Lytle, who got it from the depot, but the railway company afterwards claimed that it ought to have gone to Dickinson, and Townsend gave it up and wrote a note on November 21st, asking for No. 13. The bill of lading cannot now be obtained, as it always goes forward with the cotton and follows it to the purchasers. Terrell (now dead) and Carter both testified at a former trial of this case. Lytle, Townsend and another witness remembered the substance of the entire testimony of both. Terrell testified that he saw the bale in question loaded on the dray at Townsend's warehouse and saw the dray driven off to the depot, and when it came back he saw the receipt-book which the

drayman always carried to the depot, and this bale with all the others on that receipt was checked off, and the receipt was signed by the agent at the depot.   Lytle has not known the whereabouts of Carter for a long time prior to the present trial.  Townsend has made diligent inquiry as to his whereabouts and could not find him; heard he was sometimes in Miller county and sometimes at the bay, but could not learn anything positive about him ; has looked for him during the day of the present trial, and inquired amoung his kinsfolk, but they do not know.   An attachment from this court was issued and put into the hands of a constable to find him, to testify in this case, but he could not be found in this county.   Plaintiffs' counsel stated that he had no knowledge of his whereabouts and could not find him. He testified on the former trial that he remembered the bale, helped to load it on the dray, hauled and delivered it at the depot ; that Colbert checked it off, signed for it and gave him back the book ; and that he brought it back to the warehouse where Terrell and Townsend were and gave it to Townsend.

Peacock and Colbert testified for the defendant as follows : Receipt books sent out by warehousemen have two places on the leaf, one containing shipping instructions to the railroad; and the other, the stub, is a receipt for the cotton ordered shipped.   When the drays come, the cotton is checked off on both the shipping instructions and the stub, the former torn out, and the book returned by dray.   The cotton is checked into the cars on the shipping instructions, which are then filed away, and bills of lading are made out by them.   The bale in question was said by plaintiffs to have come down on Friday or Saturday ; and on the following Monday, while billing out all the cotton previously shipped to date, and for which bills of lading had not been made out, Peacock found that one bale of the mark LEH

No. 13 was missing. He found that one bale of that mark had been shipped by the railroad on Saturday from Dickinson's warehouse, but could not find the one from Townsend's. He then made Colbert take Townsend's receipt-book and mark off his check and receipt for this bale, and then wrote on the check "No. 13 short." The book was then sent to Townsend and came and went every trip with his dray, and Peacock heard nothing about it for several days. On November 17th, he received from Townsend a note saying: " The following cotton receipts or bill of lading wanted, for cotton that was shipped to New York by J. Steininger & Company: LEH 19, 20, 21, 31, 32, 33, 22, 21." On November 21st, he received another note from Townsend saying: " What about LEH No. 13? The receipt is wanted; send receipt of all cotton up to this load." If both these bales had been received, Peacock would have discovered it when he checked the cotton in the cars for shipment; therefore he knew this bale could not have been received, and told Townsend that if it had been loaded in the cars and not checked, it would turn up in Savannah when the bales were checked out there. Colbert checked it on the stub of the receipt and signed for it, and according to the receipt it was as surely received as any of the other bales; but Colbert could not swear whether it was received or not, and did not remember telling Townsend that he checked the bale off the dray. The bale LEH No. 13 shipped by defendant came from Dickinson's warehouse by the river, because it was checked in the car by the railroad river clerk, and Colbert had nothing to do with it. Savannah was notified and requested to look after this bale, but was never heard from about it. Several mistakes in regard to cotton have been made at the depot; and a bale once remained there for two years before they found its owner.

The jury found for the plaintiffs; and by *certiorari* the defendant alleged that the verdict was contrary to law and evidence; and that the court erred in admitting the testimony as to the former evidence of Carter, over objection that it was not satisfactorily proved that he was inaccessible, and also erred in admitting the testimony as to the contents of the bill of lading. The *certiorari* was over-ruled, and the defendant excepted.

D. A. Russell, for plaintiff in error.

Townsend & Harrell, *contra*.

Bleckley, Chief Justice.

It is doubtful whether the justice of the peace committed any error in admitting evidence; but whether he did or not, we think there was nothing to constrain the judge of the superior court to reverse the case and order a new trial. The legal evidence before the jury warranted the verdict, and in our opinion, this petty litigation ought to stop. Certainly the weight of the evidence is in favor of the verdict.          *Judgment affirmed.*